# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

LINDA J. KAMINSKY;  
LAWRENCE S. KAMINSKY;  
LINDA J. KAMINSKY AND LAWRENCE  
S. KAMINSKY, TRUSTEES OF THE LINDA  
J. KAMINSKY REVOCABLE LIVING  
TRUST UNDER AGREEMENT DATED  
JANUARY 26, 1993, AS AMENDED FROM  
TIME TO TIME.  

      Plaintiffs,

v.

EQUITY BANK,

      Defendant.

Case No. 17-CV-573-TCK-FHM

## OPINION AND ORDER

Before the Court is the Motion to Transfer Venue (Doc. 18) filed by Defendant Equity Bank (the "Bank") pursuant to 28 U.S.C. § 1404. Plaintiffs Linda J. Kaminsky and Lawrence S. Kaminksy (the "Kaminskys") oppose the motion. (Doc. 23).

This lawsuit arises from a dispute over the Bank's liquidation of a securities account owned by Linda J. Kaminsky and pledged as collateral for a series of loans made by the bank to limited liability companies owned by her husband, Lawrence Kaminsky. Plaintiffs, individually and as trustees of the Linda J. Kaminsky Revocable Living Trust Under Agreement Dated January 26, 1993, as Amended from Time to Time (the "Trust"), filed a 61-page Complaint alleging claims for breach of fiduciary duty, violation of the Equal Credit Opportunity Act ("ECOA"), restitution,

and declaratory judgment. (Doc. 2). The Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1331.

## I. Allegations of the Complaint

The Complaint alleges that the Kaminskys are residents of Olathe in Johnson County, Kansas, and are Trustees for the Trust, which was established under agreement dated January 26, 1993. *Id.*, ¶¶ 1-3. Linda Kaminsky is the settlor and sole lifetime beneficiary of the Trust, and she and her husband Larry Kaminsky are co-trustees of the Trust. *Id.*, ¶17.

Larry Kaminsky is a member of ACI Concrete Placement of Kansas; ACI Concrete Placement of Western Kansas, LLC, OKK Equipment, LLC; and KOK Holdings, LLC—all of which are limited liability companies organized and existing under the laws of Kansas; ACI Concrete Placement of Lincoln, LLC, which is a limited liability company organized and existing under the laws of Nebraska; and ACI Concrete Placement of Oklahoma, LLC, which is a limited liability company organized and existing under the laws of Oklahoma. *Id.*, ¶¶ 4-10. Larry Kaminsky is the majority owner of ACI of Lincoln and ACI of Oklahoma (collectively, the "AI Entities"). *Id.*, ¶15. Linda Kaminsky is Larry Kaminsky's spouse, and is not a member, owner, partner, director, officer or employee of any of the ACI Entities. *Id.*, ¶16.

On or about February 1, 2016, The Bank and the ACI Entities entered into a Consolidated, Amended and Restated Loan and Security Agreement (the "Loan Agreement") *Id.,* ¶20. Under the terms of the Loan Agreement, The Bank and the ACI Entities executed a Consolidated, Amended and Restated Promissory Note (the "Revolving Credit Note"), and three Amended and Restated Promissory Notes in the amounts of $1,200,000 ("Term Note #1"), $5,000,000 ("Term Note #2), and $3,195,501.05 ("Term Note #3"). *Id.*, ¶¶ 22-24. Five months later, The Bank and ACI of Kansas entered into a Promissory Note ("the "Demand Note") in the amount of $301,529.

*Id.*, ¶ 25. Collectively, the Revolving Credit Note, Term Notes #1-3 and the Demand Note are referred to as the "ACI Loans." *Id.*, ¶ 26.

The Complaint alleges that on or about February 1, 2016, as a condition of extending, continuing and renewing the ACI Loans, the Bank, in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a) and Regulation B, 12 C.F.R. § 1002.7, required Linda Kaminsky to sign as an additional party applicant a Securities Account Pledge Agreement in which she pledged the Trust's interest in securities account number 5Z191704 ("Linda Trust Securities Account") to act as a surety and secure the ACI Loans (the "Linda Trust Securities Account Pledge Agreement"), and a Securities Account Control Agreement, whereby Linda and Larry Kaminsky, as Trustees of the Linda Trust, granted the Bank control over the Trust Securities Account (the "Trust Securities Account Control Agreement"). *Id.*, ¶¶28-33, 53-58.

Subsequently, on December 23, 2016, the ACI Entities signed an "Amendment No. 1 to Consolidated, Amended and Restated Loan and Security Agreement and Other Transaction Documents" (the "First Amendment to Loan Agreement"), pursuant to which the Bank waived certain alleged ACI Loans defaults in exchange for additional collateral. *Id.*, ¶ 30. As a condition for this, the Bank required Linda Kaminsky to sign on as an additional applicant on "Collateral Assignment," in which she, as Trustee of the Linda Trust, allegedly agreed to act as a surety and assigned ownership rights in a Pacific Life Insurance Company Policy No. VP65215390 to the Bank to secure the ACI Loans (the "Life Insurance Assignment"). *Id.*, ¶31.

On February 17, 2017, the Bank required Linda Kaminsky to sign as an additional party applicant a Securities Account Pledge Agreement in which they both agreed to act as a surety and pledge their respective interests in securities account #653-17370 ("Account 370") to secure the ACI Loans (the "Larry and Linda Securities Pledge Agreement"), which was in the name of both

3

individuals as joint tenants with right of survivorship. *Id.*, ¶ 34. The Bank also required Linda Kaminsky to sign as an additional party applicant a Pledged Collateral Account Control Agreement dated February 22, 2017, whereby both plaintiffs allegedly granted the Bank control over Account 370 (the "Larry and Linda Account Control Agreement"). *Id.*, ¶ 35. The Larry and Linda Account Control Agreement states that neither Linda Kaminsky nor Larry Kaminsky may withdraw assets from Account 370, and that the Bank may provide instructions to transfer, sell, redeem, close open trades, or otherwise liquidate assets in Account 370 without the Kaminskys' consent. *Id.*, ¶ 36. Furthermore, the Loan Agreement states that no amendment shall be effective "except by a written agreement signed by Debtors and a duly authorized officer of Secured Party." *Id.*, ¶ 37. The Third Amendment to Loan Agreement does not reference the Larry and Linda Securities Pledge Agreement or the Larry and Linda Account Control Agreement. *Id.*, ¶ 38. Nevertheless, the Bank "grabbed" Account 370 assets purportedly as collateral securing the ACI Loans without first obtaining the ACI Entities' written agreement to do so as required by the Loan Agreement. *Id.*, ¶ 39.

In its Motion to Transfer Venue, the Bank argues that this case should have been filed in Kansas, and the "slender thread" connecting this case to Oklahoma is ACI Concrete Placement of Oklahoma, LLC, which is not a party to this action, but has filed its own Chapter 11 case in the United States Bankruptcy Court for the District of Kansas, Case No. 17-21772.

**II. Applicable Law**

Transfer to a different district court where the action might have been brought is governed by 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

4

The Tenth Circuit has held that this section gives courts discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The party moving to transfer a case pursuant to §1404(a) bears the burden of establishing that the existing forum is inconvenient. *Id.* at 1515.

The Court must initially decide if the case "might have been brought" in the District of Kansas before deciding whether transfer is appropriate. Under 28 U.SC. § 1391(b), venue is proper in a judicial district in which the defendant resides or any judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred. . . ." The Bank is a Kansas chartered bank with headquarters in Wichita, the Kaminskys are Kansas residents, and all of the events giving rise to this action occurred in Kansas. Therefore, the case might have been brought in Kansas.

The decision whether to transfer a case lies within the sound discretion of the trial court. *Texas Gulf Sulphur*, 371 F.2d at 147. "The purpose of § 1404(a) is to avoid wasting time, energy, and money and, in addition, to safeguard parties, witnesses, and the public against avoidable inconvenience and expense." Moore's Federal Rules Pamphlet § 1404.2[2] (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach et al.*, 523 U.S. 26 (1998)).

The party moving to transfer a case pursuant to §1404(a) bears the burden of establishing that the existing forum is inconvenient. *Id.* at 1515. In deciding a motion to transfer, courts are to consider the following factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial;

difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* at 1516 (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

### III. Analysis

**A. Plaintiffs' Choice of Forum**

"[U]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." *Employers Mut. Cas. Co.*, *supra*. However, the plaintiff's choice of forum receives less deference if the plaintiff does not reside in the district. *Id.* at 1168 (citations omitted). Additionally, courts "accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" *Id.* (citing *Cook v. Atchison, Topeka &Santa Fe Ty. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993).

Plaintiffs do not reside in this district, and the Court is not persuaded by the Kaminskys' argument that the lawsuit has a "material relationship" to this forum because of ACI of Oklahoma's location in Tulsa. ACI of Oklahoma is not even a party to this case. Instead, it is one of the many ACI entities—most of which are located in Kansas—that received loans, and the loans themselves are not the focus of the lawsuit. At issue in this action, instead, is the enforceability of the Kaminskys' pledges of collateral.[1]

---

[1] In their Sur-Reply Memorandum (Doc 30), the Kaminskys admit that the driving force for their decision to file suit in the Northern District of Oklahoma is an unpublished decision in *Citgo Petroleum Corp. v. Bulk Petroleum Corp.*, Case No. 08-CV-654-TCK, 2010 WL 3931496 (N.D. Okla. Oct. 5, 2010). There, the Court held that the Regulation B's definition of "applicant," which expressly includes guarantors, is entitled to administrative deference. *Id.* at **7-9. The Kaminskys acknowledge that the decision is nonbinding, but state that *Citgo* would be more persuasive in the Northern District of Oklahoma before this judge than it would be in the District of Kansas. (Doc. 30 at 10). However, the Supreme Court has held that a transferee forum must

None of the parties in this case reside in Oklahoma. The Kaminskys live in Olathe, Kansas, and the Bank is a Kansas Chartered Bank with headquarters located in Wichita, Kansas. The Complaint sets forth no facts indicating that *any* events giving rise to this lawsuit occurred in Oklahoma. Rather, all of the relevant events occurred in Kansas. Therefore, the Court accords little weight to the Kaminskys' choice of forum.

### B. The Accessibility of Witnesses and Other Sources of Proof

The witnesses—including the Kaminskys and the bank employees—are all located in Kansas, as are documents in the Bank's loan file and documents in the hands of relevant third parties, such as the Kaminskys' securities account brokers, who are located in Kansas and the greater Kansas City metro area. All of the likely witnesses would be subject to the subpoena power of the District of Kansas. In contrast, this court may be limited in its ability to compel compliance or attendance of third party witnesses, because Wichita and Olathe, Kansas, and Kansas City, Missouri, are all more than 100 miles from Tulsa, Oklahoma. Accordingly, the Court concludes this factor weighs in favor of transfer.

### C. The Cost of Making the Necessary Proof

If the case were to stay in the Northern District of Oklahoma, the cost of making the necessary proof would increase for both the Bank and the Kaminskys, as both sides would be required to have local counsel, to incur extra expenses for time and travel for hearings and/or trial. Therefore, the Court finds that this factor weighs in favor of transfer.

---

apply the law of the transferor court, regardless of who initiates the transfer. *Ferens v. John Deer Co.*, 494 U.S. 516, 523 (1990). Moreover, in *F.D.I.C. v. Medmark, Inc.*, 897 F. Supp. 511, 514 (D. Kan. 1995), the District Court of Kansas—like the Northern District of Oklahoma, in *Citgo*— held that a plaintiff could use the alleged violation of ECOA defensively to obtain relief from her obligation under a guaranty. Accordingly, there *is* authority in the District of Kansas supporting the Kaminskys' position.

### D. Difficulty Arising From Congested Dockets

Plaintiffs correctly point out that the number of pending cases per judge and the median time from filing to disposition of cases is higher in the District of Kansas than in the Northern District of Oklahoma. Specifically, in the 12 months ending December 31, 2017, the Northern District of Oklahoma had 239 pending cases per judge and a median time of 10 months from filing to disposition. (Doc. 23-5). In comparison, the number of pending cases per judge in the District of Kansas 461 cases per judge for the District of Kansas, and a median time of 18.7 months from filing to disposition. (Doc. 23-4). This factor weighs against transfer.

### E. The Possibility of the Existence of Questions Arising in the Area of Conflict of Laws

In addition to EOCA claims, the Kaminskys assert common law claims for breach of fiduciary duty, restitution and declaratory judgment. Although the Court questions whether restitution and declaratory judgment are truly claims, as opposed to remedies, the breach of fiduciary duty claim would clearly be governed by Kansas law. This factor weighs in favor of transfer.

### F. The Advantage of Having a Local Court Determine Questions of Local Law.

To the extent the Kaminskys assert common law claims, it would be preferable for the case to be litigated in Kansas, since the events giving rise to this suit occurred in Kansas. *Employers Mut. Cas. Co.*, *supra*.

In summary, two factors—that plaintiffs chose this forum and that the Northern District of Oklahoma has less civil case congestion than the District of Kansas—weigh in favor of transfer. However, the Court accords little weight to the Plaintiffs' choice of forum, as the allegations of the Complaint have no material relation or significant connection to this forum. The remaining

relevant factors—the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses, the cost of making the necessary proof; the possibility of the existence of questions arising in the area of conflict of laws, and the advantage of having a local court determine questions of local law—all weigh in favor of transfer.

## IV. Conclusion

Based on its analysis of the relevant factors governing motions to transfer, the Court concludes that this case should be transferred to the District of Kansas in Kansas City, where the Kaminskys and many of the Banks' witnesses are located.

Accordingly, Equity Bank's Motion to Transfer Venue (Doc. 18) is hereby granted, and the Court orders that this case be transferred to the Federal District Court of Kansas in Kansas City.

**Entered this 16th day of November, 2018.**

*[Signature: Terence C Kern]*

**TERENCE C. KERN**
**United States District Judge**